In re Eileen T. McDONALD, Debtor.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,**

v.

**Eileen T. McDONALD, Defendant.**

**Bankruptcy No. 90–9431–9P7.
Adv. No. 90–697.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

June 13, 1991.

Larry M. Foyle, Tampa, Fla., for plaintiff.

Kim Levy, Fort Myers, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is the dis-

chargeability vel non of a debt owed to the General Motors Acceptance Corporation (GMAC), by the Defendant, Eileen T. McDonald (Debtor). It is the contention of GMAC that the debt admittedly owed by the Debtor to GMAC is nondischargeable by virtue of § 523(a)(2)(A), (B), or (C) of the Bankruptcy Code. The facts which are relevant to the disposition of the claim of GMAC as established at the final evidentiary hearing are as follows:

The Debtor, a realtor by profession, reported on her Statement of Financial Affairs that she had an annual income of $6,000.00 in 1989 and $15,000.00 in 1990. In August, 1990, she had an appointment with an attorney for the purpose of discussing a possible solution to her pressing financial problems through bankruptcy. A few weeks later, she purchased a 1990 Chevy Lumina 4–door Sedan for $15,788.98. The Debtor traded in her 1987 Delta 88 as part of this transaction, and she financed the balance of the purchase price with GMAC. On September 17, 1990, the Debtor filed a voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code.

As noted earlier, GMAC seeks a determination that the debt owed to it by the Debtor is nondischargeable by virtue of § 523(a)(2)(A), (B) or (C) of the Bankruptcy Code. Section 523(a)(2) provides in pertinent part as follows:

**§ 523. Exceptions to discharge.**

(a) a discharge under Section 727 ... does not discharge an individual debtor from any debt—

(2) for money, property ... to the extent obtained by—

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

(C) for the purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 USC 1601 et seq.);

It is the contention of GMAC that the Debtor purchased the Chevy Lumina under false pretenses or by actual fraud because the Debtor, having consulted a bankruptcy attorney before purchasing the Lumina, already decided to seek relief in the Bankruptcy Court and did not intend to pay for the car, and thus, under § 523(a)(2)(A), the Debtor's debt to GMAC should be declared nondischargeable. Alternatively, GMAC also asserts a claim of nondischargeability based on § 523(a)(2)(B), contending that the Debtor submitted a materially false financial statement to GMAC who relied on the Statement when it agreed to finance the purchase of the Lumina by the Debtor. Finally, GMAC contends that the Debtor's debt to it should be declared nondischargeable under § 523(a)(2)(C) of the Bankruptcy Code because the Chevy Lumina is a "luxury good," therefore, by virtue of § 523(a)(2)(C), the debt is presumed to have been acquired fraudulently and the liability of the Debtor to GMAC should be declared nondischargeable.

■ Before considering GMAC's contentions, it should be noted at the outset that the overriding purpose of the Bankruptcy Code is to release the Debtor from the burden of his indebtedness and provide him with a new opportunity in life, free from the pressures of pre-existing debt. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

The Bankruptcy Code is silent regarding the standard of proof necessary to establish an exception to the discharge under § 523(a). The Circuit Courts were split on this issue: several Circuits, including the Eleventh Circuit, have held that the standard of proof necessary to sustain a claim of nondischargeability under § 523(a) is clear and convincing. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1261 (11th Cir.1988); *Matter of Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986); *In re Black,* 787 F.2d 503, 505 (10th Cir.1986); *In re Kimzey,* 761 F.2d 421, 423–24 (7th Cir. 1985). Only the Fourth Circuit adopted the preponderance of the evidence standard. *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988). The Supreme Court recently considered the issue and held that the preponderance of the evidence standard of proof is appropriate in cases under § 523(a) of the Bankruptcy Code. *In re Garner,* 73 B.R. 26 (Bankr.W.D.Mo.1987), rev'd., 881 F.2d 579 (8th Cir.1989), *rev'd.,* 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Thus, the Supreme Court has rejected the argument that the clear and convincing standard adopted by several courts is required to give effect to the "fresh start" policy of the Bankruptcy Code.

■ Considering the first claim of nondischargeability based on § 523(a)(2)(A), this Court is satisfied that GMAC has not met the burden of proving by a preponderance of the evidence that the Debtor obtained the money or property by false pretenses or actual fraud. While it is undisputed that the Debtor did visit a Bankruptcy attorney before she purchased the vehicle, this fact alone, of course, does not indicate that the Debtor had no intention to pay for the car. In fact, it is undisputed that the Debtor has continued to make the monthly obligation to GMAC called for in the contract, and she is current on her obligation to GMAC. This clearly rebuts GMAC's contention that the Debtor had no intention of paying for the vehicle when she purchased it. Based on this, this Court is satisfied that the vehicle was not purchased by the Debtor under false pretenses and thus, GMAC's claim of nondischargeability under § 523(a)(2)(A) must fail.

■ Next, GMAC contends under § 523(a)(2)(B) that the financial statement submitted by the Debtor in connection with the purchase was false and that the statement misrepresented her financial condition in that it failed to show that the Debtor was contemplating Bankruptcy at the time she submitted her loan application to GMAC. There is no evidence that any information on the financial statement was false. There is nothing in this record to show that the loan application submitted to GMAC by the Debtor required her to state that she intended to seek relief in the Bankruptcy Court. Accordingly, this Court finds that GMAC has failed to meet its burden of proof concerning its claim based on § 523(a)(2)(B) of the Bankruptcy Code, therefore GMAC's claim under this Section of the Code must fail.

This leaves the last contention of GMAC based on the presumed fraudulent actions of the Debtor based on § 523(a)(2)(C) of the Bankruptcy Code, which is based on the presumption that the Chevy Lumina is a luxury item, and since the vehicle was purchased by the Debtor on credit within 40 days of filing her petition for relief, the liability incurred by the Debtor is presumed to be created by fraud and, therefore, should be declared nondischargeable pursuant to § 523(a)(2)(C).

■ The term "luxury goods" is only defined indirectly in the Code, and § 523(a)(2)(C) provides that the term "luxury goods" does not include "goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor;...." It has been generally recognized that the circumstances sur-

rounding the purchase must be considered to determine whether the item should be classified as a luxury item. *In re Davis,* 56 B.R. 120 (Bkrtcy.D.Mont.1985). In addition, in determining if the item is a luxury good, one must also consider whether the item purchased served any significant family function and whether the transaction evidenced some fiscal irresponsibility. *In re Williams,* 106 B.R. 87, 89 (Bkrtcy. E.D.N.C.1989) *citing In re Davis, supra.* Purchases that are extravagant, indulgent, or nonessential under the circumstances are considered luxury goods. *In re Williams,* 106 B.R. 87 (Bkrtcy. E.D.N.C.1989).

In this case, the Debtor purchased the 1990 Chevy Lumina for $15,788.98. Certainly, the purchase does not carry the hallmark of fiscal irresponsibility. She did not purchase and finance a Rolls Royce or Cadillac on the eve of Bankruptcy. Rather, seeking reliable transportation, she financed a moderately-priced automobile. GMAC contends that since the Lumina purchased included air conditioning and other optional equipment, it is a luxury item. One could hardly equate a Lumina with the traditionally recognized luxury automobiles such as a Mercedes–Benz, BMW, Lamborghini, Bugatti or a Rolls Royce just because it carries several available options such as air conditioning, power steering, power brakes, power windows and the like. If the fact that this Lumina has these optional features would transform it into a luxury car, just like a kiss transformed a frog into a prince, one could easily transform a Yugo into the class of luxury cars by equipping the Yugo with the same options.

■ In determining whether an item is a "luxury good," it is proper to consider the reason the Debtor purchased the item and the actual use by the Debtor of the item under consideration. *In re Davis, supra,* at 122. The Debtor is employed as a realtor and, therefore, she certainly needs dependable transportation. She cannot be expected to transport her clients to show homes for sale by bus, bicycle, or a car without air conditioning in Florida's summer heat.

■ Even assuming without admitting that the Lumina could be considered to be a luxury automobile because of the optional equipment, § 523(a)(2)(C) merely creates a rebuttable presumption of fraud. This record is more than sufficient to rebut the presumption created by § 523(a)(2)(C) because the conduct of the Debtor completely belies any fraudulent intent in connection with the purchase of the Lumina. As stated earlier, the Debtor is current on her obligations to GMAC and she intends to maintain the payments, notwithstanding the fact that she filed Bankruptcy.

In sum, this Court is satisfied that GMAC failed to establish with the requisite degree of proof its claim of nondischargeability, and for this reason its claims as set forth in the Complaint cannot be sustained. A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.